AO 106 (Rev. 04/10)  Application for a Search Warrant

UNSEALED  1/17/14

# UNITED STATES DISTRICT COURT

for the

Southern District of California

13 JAN -4  PM 1: 28

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. |
| Information that is stored at Google, Inc., 1600 Amphitheater Way, Mountain View, California 94043 | ) ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

**'13 MJ 00 25**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1.

located in the ____Northern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 50 U.S.C. 1705, 18 U.S.C. 371 | Conspiracy to Commit and Illegal Export of U.S. Goods and Technology to Iran |
| 18 U.S.C. 1956 | Money Laundering |

The application is based on these facts:

See attached affidavit of HSI Special Agent Kevin Hamako

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

HSI Special Agent Kevin Hamako
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __12-31-12__

_____
*Judge's signature*

Magistrate Judge Nita L. Stormes
*Printed name and title*

City and state: San Diego, California


(1) KCM



## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANTS

I, Kevin M. Hamako, Special Agent, Department of Homeland Security, Homeland Security Investigations (HSI), being duly sworn, state:

## I.    PURPOSE OF AFFIDAVIT

1.    This affidavit is in support of an application for search warrants, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), for electronic mail ("e-mail") accounts controlled by the web-based electronic mail service providers Google, Inc. ("Google"), located at 1600 Amphitheatre Parkway, Mountain View, CA 94043, which provides service to the e-mail account IdinRafiee@gmail.com ("**Subject Account** 1") , Yahoo! Inc. ("Yahoo!"), located at 701 First Avenue, Sunnyvale, CA, 94089, which provides service to e-mail accounts MajidNouri@yahoo.com ("**Subject Account** 2"), and HassanRafiee55@yahoo.com ("**Subject Account** 3"), and GoDaddy.com ("GoDaddy") located at 14455 N. Hayden Road, Suite 219, Scottsdale, AZ, 85260, which provides service to the e-mail accounts IRafiee@Pashaint.com ("**Subject Account** 4"), and HRafiee@Pashaint.com ("**Subject Account** 5"), (Collectively known as the "Target Accounts"), to disclose information associated with the Target Accounts, including subscriber information, records, and the contents of electronic communications, and thereafter to authorize government agents to search that information and seize the items described more particularly in Attachments B-1 through B-5 to this affidavit and the applicable search warrants. I seek authority to search the Target Accounts, as described in Attachments A-1 through A-5, for items described in Attachment B-1 through B-5, respectively, that constitute evidence of violations of federal criminal law, including the International Emergency Economic Powers Act ("IEEPA"), in violation of 50 U.S.C §§ 1701-1706, the Iranian Transactions

Regulations ("ITR"), in violation of 31 C.F.R. §§ 560.203, 560.204, 560.206, and 560.208;

money laundering, in violation of 18 U.S.C. § 1956; and an ongoing criminal conspiracy to

commit these offenses, in violation of 18 U.S.C. § 371.

## II.    EXPERIENCE AND TRAINING

2.      I am a Special Agent ("SA") of United States Department of Homeland Security,

Homeland Security Investigations, San Diego ("HSI-SD"), and have been so employed since

August 2010.  Prior to my employment with HSI, I was employed as a Special Agent with the

United States Air Force Office of Special Investigations.  I am a graduate of the Federal Law

Enforcement Training Center (FLETC), Glynco, Georgia.  At FLETC, I was trained in, among

other things, general criminal investigative techniques and more specific techniques related to

Counter-Proliferation Investigations.  In my current capacity, I have participated in numerous

criminal investigations involving the illegal export of military and defense articles and "dual

use" items (used in both civil and military functions) from the United States.  Through my

training, education, and experience, I have become familiar with the manner in which

commodities are exported from the United States directly or indirectly to embargoed countries to

avoid both reporting requirements and detection by law enforcement.    I have received formal

training in the laws and regulations relating to the IEEPA and ITR, and I have conducted and

participated in investigations involving these laws and regulations.

3.      As a result of my training and experience in investigating matters concerning

counter proliferation, I have become familiar with the manner in which commodities are

exported from the United States directly or indirectly to embargoed countries or other prohibited

destinations to avoid both reporting requirements and detection by law enforcement.  I am

2

familiar with the federal laws relating to the unlawful export of arms and commodities from the

United States as specified and regulated by the Department of State, Directorate of Defense

Trade Control ("DDTC"); Department of Commerce, Bureau of Industry and Security ("BIS");

and the Department of the Treasury, Office of Foreign Asset Controls ("OFAC"). I am also

familiar with related laws, the interpretation and application of federal laws and federal court

procedures, and have previously assisted in the execution of numerous federal search and arrest

warrants. As a Special Agent with HSI, I have received considerable training related to

identifying the techniques, methods, and procedures employed by groups, organizations,

companies, corporations, and individuals to export goods and commodities in violation of United

States export laws. In addition, I have received specific instruction and training in the conduct of

criminal investigations associated with export law violations.

## III.   BACKGROUND

4.      The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C §§ 1701-1707, authorizes the President to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat.

5.      Pursuant to the IEEPA and its implementing regulations, any individual who wishes to export any goods or technology from the United States to Iran must file an application for a license and receive authorization from the United States government before exporting or attempting to export, directly or indirectly, such goods or technology.

6.      The Iranian Transaction Regulations imposed, among others, the following prohibitions:

> Section 560.203: Evasions; attempts.
>
> Any transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions contained in this part is hereby prohibited.
>
> Section 560.204: Prohibited exportation, reexportation, sale or supply of goods, technology, or services to Iran.
>
> Except as otherwise authorized . . . the exportation, reexportation,  sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited . . .
>
> Section 560.206: Prohibited trade-related transactions with Iran; goods, technology, or services.
>
> (a) Except as otherwise authorized pursuant to this part, and notwithstanding any contract entered into or any license or permit granted prior to May 7, 1995, no United States person, wherever located, may engage in any transaction or dealing in or related to:

(1) Goods or services of Iranian origin or owned or controlled by the Government of Iran; or
(2) Goods, technology, or services for exportation, reexportation, sale or supply, directly or indirectly, to Iran or the Government of Iran.

(b) For purposes of paragraph (a) of this section, the term transaction or dealing includes but is not limited to purchasing, selling, transporting, swapping, brokering, approving, financing, facilitating, or guaranteeing.

Section 560.208: Prohibited facilitation by United States persons of transactions by foreign persons.

Except as otherwise authorized pursuant to this part, and notwithstanding any contract entered into or any license or permit granted prior to May 7, 1995, no United States person, wherever located, may approve, finance, facilitate, or guarantee any transaction by a foreign person where the transaction by that foreign person would be prohibited by this part if performed by a United States person or within the United States.

## IV.    BASIS FOR MY AFFIDAVIT

7.      My knowledge of the facts alleged in this affidavit arises from my training and experience, my personal observations, my participation in the federal investigation described herein, my conversations with other law enforcement agents, and my review of documents and emails obtained during this investigation.  Because this affidavit is submitted for the limited purpose of securing a search warrant as described herein, it does not include every fact known to me concerning this investigation.  For the reasons set forth below, I believe there is probable cause to believe that evidence of violations of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C §§ 1701-1706, the Iranian Transactions Regulations ("ITR"), 31 C.F.R. §§ 560.203, 560.204, 560.206, and 560.208, money laundering, in violation of 18 U.S.C. § 1956; and an ongoing criminal conspiracy to commit these offenses, 18 U.S.C. § 371, will be found in the target accounts.

## V.    PROBABLE CAUSE

8.    As set forth below, the emails reveal evidence that Idin and Hassan Rafiee have two companies, Pasha International, based in the United States, and Pasha Tak, based in Iran, which engage in the business of purchasing and/or the facilitation of the purchase of items from foreign companies for export to Iran.

### A.    Background on Pasha International and Trans-Continental Manufacturing

9.    California Secretary of State records indicate that Pasha International Corp. (hereinafter "Pasha Int.") is a corporation registered in the state of California, and located at 2554 Commercial Street, San Diego, CA, 92120. Idin Rafiee was the incorporator for Pasha Int. Pasha Int.'s webpage, www.pashaint.com, states that the business is located at 2554 Commercial St, San Diego, CA, in the 92113 zip code, not the 92120 zip code. The webpage also states that the company is a global distributor of residential and commercial heating and air conditioning equipment and accessories. Additionally, Pasha Int. has a company profile page on Alibaba.com, an international trade webpage, which lists Dean Rafiee as the point of contact.

10.    California Secretary of State records indicate that Trans-Continental Manufacturing Inc. (TCMFG) is a corporation registered in the state of California, and is also located at 2554 Commercial Street, San Diego, CA, 92113. Ebrahim Rafiee is listed as the secretary and a corporate officer for TCMFG in the Statement of Information filed with the state of California. TCMFG's website, www.t-cmfg.com, states that the company offers a wide range of production capabilities for precision components and plastic parts, as well as import/export services. The website also states that TCMFG specializes in Computer Numerical Control (CNC) manufacturing, including four axis CNC machining. TCMFG also has a company profile page on Alibaba.com, which states that the "main products" for the company are "aerospace, safety, medical, automotive".

6

11.     A review of law enforcement and commercial databases revealed that Idin Rafiee is a naturalized U.S. citizen originally from Iran, residing in San Diego, CA, who also holds an Iranian passport that expires in May 2014.  Additionally, Hassan Rafiee is Idin Rafiee's father, and is also a naturalized U.S. citizen originally from Iran, residing in San Diego, CA.

**B.      Border Search and Subsequent Search Warrant**

12.     On October 5, 2012, Department of Homeland Security, Customs and Border Protection agents conducted an outbound border search of electronic media carried by Idin Rafiee as he was boarding an international flight from San Diego, CA to London, England.  During the border search, agents detained one (1) Dell laptop computer, one (1) Seagate external hard drive, one (1) HTC brand smart phone, and one (1) Apple iPad.

13.     The above described items, except for the iPad, were thereafter imaged on or about October 9, 2012 by an HSI Certified Forensic Agent (CFA).  Due to encryption, computer forensics personnel were unable to prepare a forensic image of the Apple iPad.  The original items were returned to Customs and Border Protection officers on or about October 12, 2012, and were made available to Rafiee for pick up shortly thereafter.  On October 23, 2012, your affiant received a copy of the emails obtained from the imaged computer and hard drive, and reviewed it until October 24, 2012.

14.     On November 1, 2012, your affiant sought and obtained authorization for search warrants (12MJ4024, 12MJ4025, and 12MJ4026) to search the above described forensic images from U.S Magistrate Judge Ruben B. Brooks.

**C.      Use of Subjects Accounts 2, 4 and 5 to Procure and Facilitate the Export of Air Conditioning Compressors to Iran**

15.     As discussed above, your affiant reviewed some of the emails on the items described above. A review of forensic images of the devices described above revealed thousands of unique

7

email communications and documents. One such series of emails consisted of correspondence between Idin Rafiee, using email accounts for both the U.S.-based and Iran-based companies, and Valley, a representative of an auto parts company based in China, for the purchase of items to be exported to Iran. For example, in one email discovered on the Seagate hard drive, dated February 8, 2012, Idin Rafiee, using **Subject Account** 4, wrote to Valley, using email account Valley@ali-shan.com.cn, and stated that

> I have forwarded the attachment and email to our team In [sic] Iran. I will inform you as soon as I hear back from them. In the U.S. Our [sic] company is called PASHA INTERNATIONAL and in Iran we are called PASHA TAK. For our orders for Iran please indicate Pasha Tak in the invoices or we will give you the information of the company.

16.   The following day, Idin Rafiee, using **Subject Account 4**, emailed Valley, and stated, "For our shipment to Iran. Please make the PFI[1] to Pakshoma Co. and we will open the L/C. The name of the bank that we are going to be using is (KUNLUN BANK). Please include the bank information in the PFI." This email was discovered on the Seagate hard drive.

17.   On February 17, 2012, Idin Rafiee, using **Subject Account 4**, emailed Valley, and stated, "I have forwarded the PFI to our purchasing team in Iran, and they are going to get back to me soon. I will inform you as soon as I hear from them." This email was discovered on the Seagate hard drive.

18.   A couple of weeks later, on February 29, 2012, Idin Rafiee, using **Subject Account 4**, emailed Valley. The email, which was discovered on the Seagate hard drive, read:

> Please revise the PFI with the following information:
> Company name: Pakshoma co.
> add: no .28 12st, ahmad ghasir ave, Tehran, Iran.
> Tel: 0098 21 88731508 fax: 0098 21 88731801
> www.pakshoma.com
> ...

---

[1]   As discussed below in an email on March 1, 2012, "PFI" appears to be an acronym for a pro forma invoice.

Idin rafiee
Tel: (+98 21) 77526815
Tel2: (+98 21) 77526816
Fax: ( +98 21) 77532309
Website: www.pashatak.com ... (Under Construction)
Email: irafiee@pashatak.com
Address: Unit. 4, Number. 6, taleghani Alley., Noor Mohammadi St., Piche Shemiran, Enghelab Ave. Tehran, Iran.

19.     On March 1, 2012, Idin Rafiee, using another email address, IRafiee@pashatak.com, emailed Valley a revised PFI, stating, "This is the revised PFI for the order.   Please check."  The email contained an attachment, entitled "P I From Alishan to Iran 2012-02-02 (3).xlsx," which was a Microsoft Excel spreadsheet document.  The spreadsheet document was a Proforma Invoice from Alishan Auto Parts Co., Ltd, 2F, Building 3, No. 69 Chaofu Road, JiuTing Town, SongJiang District of Shanghai, China, to Pakshoma Co, no .28 12st, ahmad ghasir ave, Tehran, Iran.  The invoice, dated February 8, 2012, contained six line items, including model numbers, dimensions, photos, quantities, values, and other information for approximately $107,100 USD worth of goods.  This email was discovered on the on the Seagate hard drive.

20.     I went to the www.ali-shan.com.cn website, and was redirected to www.ali-shan.com.tw.  I looked up the six part numbers from the March 1st invoice on the www.ali-shan.com.tw website, and observed that the part numbers all corresponded to universal air conditioning compressors for commercial vehicles.  The website also stated that Alishan specializes in the manufacture of air conditioning compressors for various car brands, as well as compressor accessories, expansion valves, and electric drive compressors.

21.     On March 13, 2012, Idin Rafiee, using **Subject Account** 4, forwarded an email from Valley to Hassan Rafiee, using **Subject Account** 5.  The email contained a revised invoice.  This email was discovered on the on the Seagate hard drive.

22.     In addition to the transaction described above, it appears that the Rafiees continued to

conduct business with ali-shan in an effort to procure items to be exported to Iran.  For example, on

June 8, 2012, Idin Rafiee, using **Subject Account 4**, sent an email to Majid Nouri, at **Subject**

**Account 2**, Hassan Rafiee, at **Subject Account 3**, and Poormahdi@sardrizan.com.  The email

consisted of forwarded correspondence, which included an email from Idin Rafiee, using **Subject**

**Account 4,** to Stacy@Ali-Shan.com.tw, with **Subject Account 2**, Coldline@msn.com, and

poormahdi@sardrizan.com copied.  The email read in part:

> For TT to be processed, the government of Iran needs an inspection company to
> inspect the product before being send to IRAN.  SGS is one of the most famous
> Quality control companies in the world !!! … We want Ali-Shan to understand that
> our team in iran has spent a lot of time and money to work on this project.

**D.     Use of Subject Accounts 2-5 to Discuss Knowledge of U.S. Sanctions Against Iran**

23.     Additional emails revealed discussions about the Rafiees' knowledge of the U.S.

sanctions against Iran.  For example, on May 14, 2012, Hassan Rafiee, using email address

Coldline@msn.com, emailed Idin Rafiee at **Subject Account 4**, and two other email addresses,

**Subject Account 5**, and **Subject Account** 2.  The email contained multiple earlier emails to Hassan

Rafiee included in a forwarded chain of emails.  The earlier emails included the following

statements:

> Dear Mr. Rafiee, … , we wish to inform that due to Sanctions implemented by
> US on iran transactions, at present all the transactions are on hold.

> Dear Mr. Rafiee, … due to the sanctions we are unable to to [sic] take any
> actions at this moment.

> Dear Mr. Rafiee, … we are not in a position of accepting new orders due to
> sanctions.  We will update you once the situation improves and get approval from our
> legal department.

> Dear Mr. Rafiee, … This was delayed since no bank is ready for transaction
> with Iran due to US sanctions.

24.     Additionally, on February 9, 2012, Idin Rafiee, using **Subject Account** 4, emailed a

U.S. manufacturer, stating:

> However, PASHA INTERNATIONAL does not do business with Iran, due to
> sanctions.  Company that is owned by my Family in Iran is called PASHA TAK.  For
> info regarding sales email contact info@pashatak.com.

25.     Finally, on April 22, 2012, Hassan Rafiee, using email address **Subject Account** 3,

emailed Idin Rafiee at **Subject Account** 4.  The email contained several previous emails to Hassan

Rafiee included in a forward chain.  The previous emails included an email which stated, in part,

> As I have stated before we would need your help regarding the problem we have with
> USgovernment [sic] sanction that Iran is facing we can only send money through L/C
> or TT through China,India,Turkey&Russia [sic] that means the performa s [sic] has to
> be issue from these countries…

This email indicates to me that due to the U.S. and international sanctions on transactions with Iran,

the Rafiees and Pasha Tak are moving money from Iran, through China, India, Turkey, or Russia to

pay for items, purchased from Chinese companies, to be delivered to Iran.

**E.     Idin Rafiee Uses Subject Account 1 in Pasha Tak Business**

26.     On November 15, 2012, I conducted research regarding the webpage

www.pasthatak.com using an open source database search tool, CentralOps.Net.  The research

revealed that the registrant for the webpage www.pashatak.com is Idin Rafiee, 6181 Caminito Pan,

San Diego, California 92120.  Additionally, Idin Rafiee was listed as both the administrative contact

and the technical contact for this webpage, and **Subject Account 1** was listed in the contact

information.

27.     On January 18, 2012, Vahid Akbari, using email address Vakbari@pashaint.com,

emailed Teagle Young at email address Yonchi001@126.com, a presumed Chinese national

employed by Wuhan Yonchi Trading Co. Ltd., with **Subject Account 1** and **Subject Account 5** carbon copied. The subject line of the email was "Re: shipment of the DVE vacuum pump." The email included the following text:

> Dear Mr Young
> DVE vacuum pump
> ZJP-600 1PCS
> ZJP-1200 4PCS
> 2H-150 DV 6 PCS

28.     On February 13, 2012, Young emailed Vakbari@pashaint, with Hassan Rafiee (Bestcool@hotmail.com) and **Subject Account 4** copied. The subject line of the email was "Re: shipment of the DVE vacuum pump". The email contained an attached document, which was a proforma invoice reflecting a sale of vacuum pumps from Wuhan Yonchi Trading Co. Ltd, Wuhan, China, to Tolidi Sanati Simin Foolad Shargh Co, Tehran, Iran. The proforma invoice listed the same part numbers and quantities described in the paragraph above. The prices listed on the invoice were 47,800 Euro for the parts, and 630 Euro for shipping "From Ningo to Banda Abbas."

29.     Based on this information, I believe there is probable cause to believe that Idin Rafiee, a U.S. person, is using **Subject Account 1** to conduct business regarding Pasha Tak, a company located in Iran, and to broker the sale and shipment of Chinese made vacuum pumps to customers in Iran.

### F.     Use of Subject Accounts 2-5 to Procure Freon for Shipment to Iran

30.     On December 5, 2011, Hassan Rafiee, using **Subject Account 5**, emailed Majid Nouri at **Subject Account 2**, with Idin Rafiee, at **Subject Account 4** copied. The subject line of the email was "FW: PFI of Freon." The email included an attached proforma invoice, which listed $80,005 worth of five types of gasses, from Bestcool Enterprise Co. Limited, Hong Kong, to Hassan

Rafiee Khameneh, No. 6 Taleghani Alley, Noor Mohammadi St., Enghelab Ave., Tehran, Iran. The proforma invoice reflected shipment from Ningbo, China, to Banda Abbas, Iran.

31.     The Rafiees' efforts to obtain freon continued. For example, on February 1, 2012, Idin Rafiee, using IRafiee@Pashatak.com, emailed Hassan Rafiee at **Subject Account 3** and Vahid Akbari at BestcoolBC@yahoo.com. The email stated in part, "Following are the Freon prices that I got. I asked many different companies ... We must got [sic] with Yonchi prices." Included in this email were previous emails from Idin Rafiee to a company in China for multiple types of gasses, some of which were the same types listed in the proforma invoice described in paragraph 29, for shipment to Iran.

32.     While Majid Nouri's role in the sale and shipment of the freon to Iran is unclear, the information described above is evidence that **Subject Account** 2, as well as **Subject Accounts 4** and 5, contain evidence of violations of IEEPA, money laundering, in violation of 18 U.S.C. § 1956; and an ongoing criminal conspiracy to commit these offenses, in violation of 18 U.S.C. § 371, and probable cause to believe that said offenses have been committed.

33.     In December 2012, a request was sent to OFAC for a license history for Idin Rafiee, Hassan Rafiee, Pasha International, and Trans-continental Manufacturing. The search disclosed no responsive records of applications submitted by or on behalf of the subject individuals and companies, nor any OFAC licenses issued to them.

## VI.     EVIDENCE LIKELY TO BE OBTAINED IN SEARCH OF TARGET ACCOUNTS

34.     Based on my training and experience, and information provided to me by other law enforcement agents, I know the following: First, searches of e-mail accounts usually provide information that helps confirm the identity of the user(s) of the e-mail accounts. Second, individuals who use e-mail in connection with criminal activity, or activity of questionable legality, often set up

13

separate e-mail accounts to be used solely for limited criminal purposes.  This is often part of an effort to avoid detection and to separate personal communication from communication and information that is related to the criminal activity.  Third, when the criminal violation involves a conspiracy, a search of an e-mail account often allows the identification of co-conspirators.

35.      In this case, a review of the stored electronic communications of the Target Accounts will help identify other transactions conducted in violation of U.S. export control laws and sanctions, as well as other co-conspirators.  The review of the stored electronic communications of the Target Account will further enable HSI to identify other possible violations and violators of U.S. export laws and sanctions.  Due to the complexity of international shipping and the difficulty in conducting international business, violators of export regulations are careful with their record keeping and spend a great deal of time and effort to effect their illegal transactions.  Electronic communications are often the primary method for documenting their transactions and as such, in my experience, are often not deleted from the server by the e-mail account holder.

36.      Based on my training and experience, and my consultation with my fellow agents , I believe that the evidence that I seek remains in and will be found in the Subject Account.  Routinely, during previous cases we have found emails dating back several months or even years relevant to the investigation.  Specifically, for example, on or about April 21, 2010, the Court signed a search warrant for email account "snazzidubai@yahoo.com."  The results from the execution of the search warrant on "snazzidubai@yahoo.com" revealed evidence of a conspiracy to export U.S. goods and technology from the United States to Iran, in violation of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705, 18 U.S.C. § 554 (Smuggling Goods from the United States), and 18 U.S.C. § 371, that dated back to 2005.  As such, I believe that the evidence I seek, as described in Attachments B-1 through B-5, will be found in the Target Accounts, described in

14

Attachments A-1 through A-5.

## VI.   SEARCH PROCEDURE

### GENUINE RISKS OF DESTRUCTION OF EVIDENCE

37.      Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills.  In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

38.      The United States has not attempted to obtain this data by other means.

### ISP

39.      Google, Yahoo, and GoDaddy are Internet companies that, among other things, provides electronic communication services to its subscribers.  Google, Yahoo, and GoDaddy's electronic mail service allows their subscribers to communicate with other subscribers and with others through the Internet.  Google's subscribers access Google's services through the Internet

40.      Subscribers to Google, Yahoo, and GoDaddy use screen names during communications with others.  The screen names may or may not identify the real name of the person using a particular screen name.

41.      At the creation of a Google, Yahoo, and GoDaddy account and for each subsequent access to the account, Google, Yahoo, and GoDaddy log the Internet Protocol ("IP") address of the computer accessing the account. An IP address is a unique address through which a computer connects to the Internet.  IP addresses are leased to businesses and individuals by Internet Service Providers.  Obtaining the IP addresses that have accessed a particular Google, Yahoo, and GoDaddy account often identifies the Internet Service Provider that owns and has leased that address to its

customer.  Subscriber information for that customer then can be obtained using appropriate legal

process.

Procedures for Electronically Stored Information

42.    Federal agents and investigative support personnel are trained and experienced in

identifying communications relevant to the crimes under investigation.  The personnel of Google,

Yahoo, and GoDaddy are not.   It would be inappropriate and impractical for federal agents to search

the vast computer networks of Google, Yahoo, and GoDaddy for the relevant accounts and then to

analyze the contents of the accounts on the premises of Google, Yahoo, and GoDaddy.  The impact

on Google, Yahoo, and GoDaddy's business would be severe.

43.    Therefore, I request authority to seize all content, including electronic mail and

attachments, stored instant messages, stored voice messages, photographs and any other content

from the Google, Yahoo, and GoDaddy accounts, as described in Attachments B-1 through B-5.  In

order to accomplish the objective of the search warrant with a minimum of interference with the

business activities of Google, Yahoo, and GoDaddy, to protect the rights of the subject of the

investigation and to effectively pursue this investigation, authority is sought to allow Google, Yahoo,

and GoDaddy to make a digital copy of the entire content of the accounts subject to seizure.  That

copy will be provided to me or to any authorized federal agent.  The copy will be forensically

imaged and the image will then be analyzed to identify communications and other data subject to

seizure pursuant to Attachments B-1 through B-5.  Relevant data will be copied to separate media.

The original media will be sealed and maintained to establish authenticity, if necessary.

44.    Analyzing the data to be provided by Google, Yahoo, and GoDaddy may require

special technical skills, equipment and software.  It also can be very time-consuming.  Searching by

keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its

context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. The data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

45.     Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months.   Keywords need to be modified continuously based upon the results obtained. The personnel conducting the segregation and extraction of data will complete the analysis and provide the data authorized by this warrant to the investigating team within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

46.     Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject account and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

47.     All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification, segregation and extraction of data within the scope of this warrant.

## VII.    REQUEST FOR NON-DISCLOSURE BY PROVIDER

48.     Pursuant to 18 U.S.C. § 2705(b), I request that the Court enter an order commanding Google, Yahoo, and GoDaddy not to notify any other person, including the subscriber of the Target Accounts, of the existence of the warrant because there is reason to believe that notification of the

17

existence of the warrant will result in: (1) endangering the life or physical safety of an individual; (2) destruction of or tampering of evidence; or (3) otherwise seriously jeopardize the investigation. The involvement of the Target Accounts as set forth above is not public and I know, based on my training and experience, that subjects of criminal investigations will often destroy digital evidence if the subject learns of an investigation. Additionally, if Google, Yahoo, and GoDaddy or other persons notify anyone that a warrant has been issued on the Target Accounts, the targets of this investigation and other persons may further mask their identity and activity and seriously jeopardize the investigation. Additionally, this investigation also involves a cooperating company and undercover agent. Disclosing this warrant has the potential to jeopardize the investigation and compromise the safety of those individuals.

## VIII.    REQUEST FOR SEALING

49.      It is respectfully requested that this Court also issue an order sealing, until further notice of the Court, all papers submitted in support of this application, including this affidavit, the application, and the warrant itself, except that a copy of the warrant, including its attachments, shall be served upon Google, Yahoo, and GoDaddy. I submit that the requested sealing is necessary because the information and items to be disclosed and seized are relevant to an ongoing investigation into the criminal activities described herein. Based upon my training and experience, I have learned that online criminals actively search the Internet for criminal affidavits and search warrants and disseminate them to other online criminals as they deem appropriate, such as by posting them publicly online. Premature disclosure of the contents of this affidavit and related documents may compromise this ongoing investigation by, among other things, causing the subject(s) to flee and suspect(s) to destroy or alter evidence.

## IX.    CONCLUSION

50.     The information discussed herein reveals evidence that Idin and Hassan Rafiee—both U.S. persons--have two companies, Pasha International, based in the United States, and Pasha Tak, based in Iran, which engage in the business of purchasing and/or the facilitation of the purchase of items from foreign companies for export to Iran.  Additionally, the information demonstrates that there is probable cause to believe that violations of federal criminal law, including the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C §§ 1701-1706, the Iranian Transactions Regulations ("ITR"), 31 C.F.R. §§ 560.203, 560.204, 560.206, and 560.208, money laundering, in violation of 18 U.S.C. § 1956; and an ongoing criminal conspiracy to commit these offenses, 18 U.S.C. § 371, have occurred.  In addition, in that as described above, Idin Rafiee, Hassan Rafiee, as well as others, use the target accounts, described in Attachments A-1 through A-5, to communicate about their involvement in transactions of goods to Iran, as well as their awareness of U.S. sanctions on transactions with Iran, I believe there is probable cause to believe that the items identified in Attachments A-1 through A-5, contain evidence of violations of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C §§ 1701-1706, the Iranian Transactions Regulations

//

//

//

//

//

//

//

//

19

("ITR"), 31 C.F.R. §§ 560.203, 560.204, 560.206, and 560.208, money laundering, in violation of

18 U.S.C. § 1956; and an ongoing criminal conspiracy to commit these offenses, 18 U.S.C. § 371, as

described in Attachments B-1 through B-5, respectively.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and

correct.

Special Agent Kevin Hamako
Department of Homeland Security
Homeland Security Investigations

Sworn to before me this
__3/__ day of December____ 2012

Hon. Nita L. Stormes
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A-1**

This warrant applies to information associated with email address IdinRafiee@gmail.com, which is

stored at premises owned, maintained, and controlled by Google, Inc., 1600 Amphitheatre Parkway,

Mountain View, CA  94043.

## ATTACHMENT B-1

### I. Service of Warrant

The officer executing the warrant shall permit Google, Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

### II. Items subject to seizure

All subscriber and/or user information, all electronic mail, images, text messages, histories, buddy lists, profiles, method of payment, detailed billing records, access logs, transactional data and any other files associated with the following accounts and screen names:

IdinRafiee@gmail.com

The search of the data supplied by Google, Inc., pursuant to this warrant will be conducted as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to:

a.      Communications, data, or attachments by, to, or involving U.S. persons such as Idin and Hassan Rafiee about or tending to discuss or indicate the export, reexport, sale, or supply of goods or services to Iran;

b.      Communications, data, or attachments about or tending to indicate knowledge of U.S. laws and regulations governing transactions with persons or entities in Iran;

c.      Communications, data, or attachments tending to identify others involved in the criminal activity above and below;

d.      Communications, data, or attachments specifically referencing the following email addresses discussed in the affidavit submitted in support of the search warrant: IRafiee@pashaint.com; Vakbari@pashaint.com; Valley@ali-shan.com.cn; Stacy@ali-shan.com.tw; HRafiee@pashaint.com; IRafiee@pashatak.com; info@pashatak.com; MajidNouri@yahoo.com; hassanrafiee55@yahoo.com; Coldline@msn.com; Yonchi001@126.com; Bestcool@hotmail.com; BestcoolBC@yahoo.com; and Poormahdi@sardrizan.com;

e.      Communications, data, or attachments that tend to provide context to any communications above such as electronic mail sent or received in temporal proximity to any relevant communications or communications, data, or attachments tending to identify the user of or person with control over the account IdinRafiee@gmail.com;

which tend to prove violations of law, including the International Emergency Economic Powers Act ("IEEPA"), in violation of 50 U.S.C §§ 1701-1706, the Iranian Transactions Regulations ("ITR"), in violation of 31 C.F.R. §§ 560.203, 560.204, 560.206, and 560.208; money laundering, in violation of 18 U.S.C. § 1956; and an ongoing criminal conspiracy to commit these offenses, in violation of 18 U.S.C. § 371.